IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY ALLAN PATTERSON, #136556, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALA. BD. OF PARDONS & PAROLES, ) <br> et al., ) <br> ) <br>     Defendants. ) | CASE NO. 2:18-CV-595-RAH-KFP |
| LARRY ALLAN PATTERSON, #136556, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALA. BD. OF PARDONS & PAROLES, ) <br> et al., ) <br> ) <br>     Defendants. ) | CASE NO. 2:18-CV-622-RAH-KFP |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### **I.     INTRODUCTION AND PROCEDURAL HISTORY**

This 42 U.S.C. § 1983 action is pending before the Court on Plaintiff Larry Allan Patterson's Amended Complaint.[1] Plaintiff seeks punitive damages and an order from this Court (i) declaring that Defendants violated his equal protection rights and Alabama's parole statutes and procedures are unconstitutional and (ii) requiring the Board to provide him a new parole hearing under the parole statutes and procedures that

---

[1] On October 16, 2018, this Court entered an order requiring Plaintiff to file an amended complaint; many of the claims stated in his original complaint, arising from his tenth denial of parole on January 24, 2018, were baseless. *See* Doc. 12.

were in place when he committed the crime for which he was imprisoned. The basis for his equal protection claims is that he, as a sex offender, has been unconstitutionally denied parole while inmates who are not classified as sex offenders have been released. *See* Doc. 13. On this same basis, he brings claims for violations of his due process rights and the United States Constitution's ex post facto clause, and he also asserts a claim under 42 U.S.C. § 1981.

He names as Defendants Lyn Head, the current Chairman of the Alabama Board of Pardons and Paroles, and Terry Davis, former member of the Board. *Id.* Both Head and Davis voted to deny Plaintiff parole, but they maintain the denial was for proper reasons and deny all of Plaintiff's allegations. Docs. 20-2; 20-3. He also names as a Defendant Cliff Walker, a current associate member of the Board, who was chairman at the time of Plaintiff's parole denial. Doc. 13. However, Walker did not vote in Plaintiff's case and denies all of Plaintiff's allegations. Doc. 20-4. Finally, Plaintiff names as a Defendant Eddie Cook, the Executive Director of the Board, who does not have statutory authority to grant or deny parole and did not vote in Plaintiff's parole hearing. Docs. 13 and 20-5. Plaintiff does not state specifically whether he sues these Defendants in their official or individual capacities. Doc. 13.

Defendants filed special reports and relevant evidentiary materials addressing Plaintiff's claims for relief. Docs. 20 and 22. In these filings, Defendants Head and Davis deny that Plaintiff's parole file contains any false or incorrect information. Docs. 22-1 and 22-2. These Defendants further assert they did not knowingly rely on any false information in denying Plaintiff's parole. *Id.* Also, these Defendants deny violating any

2

of Plaintiff's constitutional rights, including due process and equal protection of the law. Doc. 20-2 and 20-3. Defendants Walker and Cook state they did not vote in Plaintiff's parole hearing and took no actions that violated any of Plaintiff's constitutional rights. Docs. 20-4 and 20-5.

After reviewing the initial special report and supplemental special report filed by Defendants, Docs. 20 and 22, the Court issued an order on January 14, 2019 directing Plaintiff to file a response to each of the arguments set forth by Defendants in their reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 23 at 1-2. The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the [C]ourt may at any time [after expiration of the time for Plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 23 at 3. Plaintiff filed a response to these reports on February 21, 2019. Doc. 25. Pursuant to the directives of the orders entered in this case, the Court now treats Defendants' reports collectively as a motion for summary judgment and concludes that summary judgment is due to be GRANTED in favor of Defendants.

## II.    SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is

3

no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials, and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

Once Defendants meet their evidentiary burden, as they have in this case, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine material dispute exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery*, 64 F.3d at

593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one

of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Patterson's pro se status alone does not compel this Court to disregard elementary principles of production and proof in a civil case.

## III. DISCUSSION

Upon a thorough and exhaustive review of all the evidence in the record, and for the reasons set forth below, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact to preclude entry of summary judgment in favor of the Defendants.

### A. Material Facts

Plaintiff is an inmate at the Alabama Limestone Correctional Facility in Harvest, Alabama. He is currently serving a life sentence for Rape in the Second Degree as a Habitual Offender. The parole decision relevant to this cause of action occurred on January 24, 2018. On this date, Defendants Head and Davis voted to deny Plaintiff parole. Doc. 20-1. Plaintiff states that he was also unconstitutionally denied parole ten times prior to January 24, 2018 (Doc. 13 at 3); however, those claims are not before this Court.

B.     **Immunity Bars Some of Plaintiff's Claims**

1.     **Absolute Immunity — Official Capacity Claims**

Plaintiff has not stated whether he sues Defendants in their official or individual capacities. However, to the extent Plaintiff requests monetary damages from Defendants in their official capacities, he is not entitled to that relief under the doctrine of absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). In other words, a state official may not be sued for monetary damages in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

"Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Indeed, the Alabama Constitution states that "the State of Alabama shall never be made a defendant

7

in any court of law or equity." *Selensky*, 619 F. App'x at 849 (citing Ala. Const. Art. I, § 14). The Supreme Court has recognized that this language prohibits Alabama from waiving its immunity from suit. *Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution)).

Accordingly, to the extent Plaintiff seeks monetary damages from Defendants in their official capacities, he is not entitled to that relief because Defendants are entitled to absolute immunity under the Eleventh Amendment. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity). Thus, Plaintiff's damages claims against Defendants in their official capacities must be dismissed.

### 2. Quasi-Judicial Immunity — Individual Capacity Claims

To the extent Plaintiff seeks monetary damages from Defendants in their individual capacities for actions relating to the parole consideration process and the denial of parole, he is likewise entitled to no relief. The Eleventh Circuit has long recognized that parole board officials are entitled to quasi-judicial immunity from suits requesting damages based upon decisions to grant, deny, or revoke parole. *Fuller v. Georgia State Bd. of Pardons and Parole*, 851 F.2d 1307 (11th Cir. 1988); *Cruz v.*

*Skelton*, 502 F.2d 1101, 1101–02 (5th Cir. 1974)[2]. All the actions about which Plaintiff complains arose during proceedings resulting in the denial of parole. Under these circumstances, the actions of parole officials are inextricably intertwined with their decision-making authority, and they are therefore immune from claims of monetary damages. Thus, Plaintiff's damages claims against Defendants in their individual capacities must be dismissed.

      **C.**    **Respondeat Superior and Vicarious Liability**

Head and Davis are the only Defendant-employees of the Parole Board who participated in the decision to deny Plaintiff parole in June of 2018. As for Plaintiff's claims against the remaining parole Defendants, Walker and Cook, Plaintiff is entitled to no relief, as these claims are based on unsustainable theories of respondeat superior or vicarious liability.

The law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of respondeat superior [or vicarious liability] . . . . A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

---

[2] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding in the Eleventh Circuit).

Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citations, and parentheses omitted); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability"); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (holding that a supervisory official "can have no respondeat superior liability for a section 1983 claim"); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding that supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (holding that § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under a theory of respondeat superior or vicarious liability). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for any actions of Defendants Head and Davis could attach to the other named defendants only if these defendants "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Plaintiff has presented no evidence that would create a genuine issue of disputed fact with respect to the claims lodged against Defendants Walker and Cook. The evidentiary materials before the Court fail to demonstrate that these Defendants personally participated in or had any involvement with the challenged parole decision. Docs. 20-4, 20-5. Accordingly, Defendants Walker and Cook may be held liable for

actions of Defendants Head and Davis only if their actions bear a causal relationship to the purported violation of Plaintiff's constitutional rights. To establish the requisite causal connection, Plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [these Defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or a "custom or policy [that] result[ed] in deliberate indifference to constitutional rights or . . . facts [that] support an inference that [these Defendants] directed [Defendants Head and Davis] to act unlawfully or knew that [they] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).

Upon consideration of the pleadings and evidentiary materials submitted in this case, Plaintiff has failed to meet this burden. The record before the Court contains no evidence to support an inference that Defendants Walker and Cook caused Defendants Head and Davis to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Plaintiff has presented no evidence of obvious, flagrant, or rampant abuse of continuing duration in the face of which these Defendants failed to take corrective action. Finally, it is clear that the challenged action did not occur pursuant to a policy enacted by Walker or Cook. Thus, the requisite causal connection does not exist between the actions Plaintiff challenges and the conduct of Defendants Walker and Cook, and summary judgment is therefore due to be granted in favor of these Defendants.

### D. "Sex Offender" Status Claims

With respect to Plaintiff's claims against Defendants Head and Davis, Plaintiff appears to allege that he has been unconstitutionally denied parole on the basis of his

"sex offender" status. Specifically, he claims that these Defendants' parole denials have violated his due process rights, his equal protection rights, and the Constitution's ex post facto clause. He also claims that Defendants have selectively denied him parole because he is a sex offender, which he contends violates 42 U.S.C. § 1981.

### 1. Due Process Claims

Under a due process analysis, the Court must determine "whether there exists a liberty or property interest of which a person has been deprived and if so, . . . [then] whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citation omitted). In this case, Plaintiff's allegation that Defendants deprived him of his due process rights by arbitrarily and capriciously promoting differential treatment between him, a sex offender, and other violent offenders fails the first step. In *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 12 (1979), the Supreme Court recognized that the determination of whether a state's parole statute provides a "protectible entitlement must be decided on a case-by-case basis." The Eleventh Circuit has made clear that Alabama parole statutes <u>do not</u> create a liberty interest in parole. *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982); *Ellard v. Alabama Bd. Of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987) ("[T]he Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole."); *Slocum v. Georgia State Bd. of Pardons & Paroles*, 678 F.2d 940, 942 (11th Cir. 1982) (stating that, where no liberty interest exists, the procedures do not have "to comport with standards of fundamental fairness.").

12

Although Plaintiff does not have a liberty interest in parole, he does have "a substantive due process right for his parole decisions not to be arbitrary or capricious." *Ellison v. Alabama Bd. of Pardons & Paroles*, 2017 WL 6947946, at *5 (11th Cir. Dec. 13, 2017). However, the Court is not aware of any binding case law concluding that a denial of parole based solely on a prisoner's sex offender status would violate substantive due process. Moreover, even "[a]ssuming, arguendo, that a parole decision based solely on a prisoner's status as a sex offender would violate substantive due process, [Plaintiff] has not shown that *his* rights were violated." *Id.* (emphasis added). As in *Ellison, id.* at *6, Defendants Head and Davis both testified that they "followed the statutory requirements set forth in Ala. Code § 15-22-27.3" with respect to denying Plaintiff parole and did "not believe that [Plaintiff] should be barred from parole based on his status as a sex offender." Docs. 20-2 at 2; 20-3 at 2. Plaintiff has presented no contrary evidence. Accordingly, the Court concludes that Plaintiff's due process claim fails.[3]

### 2. Ex Post Facto Claim

Plaintiff claims that "because he is a sex offender, Defendants violated the Ex Post Facto clause of the Constitution by retroactively applying administrative rules and statutes to deny, alter frequency of his future parole violations from every three years to

---

[3] Plaintiff failed to comply with this Court's October 16, 2018 Order directing him to amend his complaint to "describe[] how these parole board members acted in an arbitrary and capricious manner during the parole consideration process and identify the false information on which the parole board members relied." Doc. 12 at 10. Moreover, Defendants state they are "not aware of any false information in Plaintiff's parole file" and did not "rely[] on any false information when reaching [the] vote to deny Plaintiff parole." Docs. 22-1 at 2 and 22-2 at 2. Accordingly, the Court concludes that any due process claim based on alleged false information also lacks merit and is due to be denied. *See Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th Cir. 1991) ("We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration.") (citation omitted).

every five years." Doc. 13 at 2. To establish this claim, "[t]he controlling inquiry . . . [is] whether retroactive application of the change in [the parole law at issue] create[s] 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Garner v. Jones*, 529 U.S. 244, 250 (2000) (citations omitted).

Here, Plaintiff does not specifically identify which rules or statutes Defendants are allegedly misusing. More importantly, the facts demonstrate that Defendant has had frequently scheduled parole hearings. Indeed, it is undisputed that Plaintiff's next parole hearing, following the January 24, 2018 denial at issue here, was set for approximately three years later in January 2021. Doc. 20-6. Plaintiff has made no allegation nor provided any evidence that this hearing did not occur as scheduled. Regardless, changes in the frequency of hearings, alone, would not push the claim forward. The Supreme Court has held that Georgia's changes in the frequency of parole consideration hearings, where Georgia state law gave discretion to the Board to govern parole procedures, did not violate the Ex Post Facto Clause. *Garner*, 529 U.S. at 254–55; *Compare* Ala. Code § 15-22-37 *with* Ga. Code Ann. § 42-9-45 (West). Because Alabama's parole statutes, like Georgia's, left the frequency of parole hearings to the Board's discretion, the Court concludes that this claim lacks merit and is due to be denied.

### 3. Equal Protection Claim

Plaintiff alleges that "Shane Hall, Clint Mathis and numerous other violent offenders have been let out, released on parole granted, worser crime, with doing less time than Plaintiff," which demonstrates that he is being denied equal protection under the law as a sex offender. Doc. 13 at 3. However, "[t]he Fourteenth Amendment 'does

not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [its treatment of inmates].'" *Jacobs v. Woodall*, 2012 WL 607660, at *5 (M.D. Ala. Jan. 27, 2012) (citing *Ross v. Moffitt*, 417 U.S. 600, 611–12 (1974) and *Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.")).

To state a discrimination claim under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001) and *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–265 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence that merely indicates disparity of treatment or even

15

arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Plaintiff's naming of Shane Hall and Clint Mathis, without more, fails to identify a similarly situated inmate, i.e., an inmate with a similar criminal background or prison history, who received differential favorable treatment. Thus, Plaintiff's "equal protection claim necessarily fails first because he has not [asserted] that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319; *Ellison,* 2017 WL 6947946, *6 (holding that no equal protection violation occurred because "[a]lthough [Plaintiff] alleged that the Board was denying parole for sex offenders simply because they were sex offenders, [he] did not show that there were similarly situated inmates that were being treated differently"). Additionally, this claim fails because Plaintiff "has not alleged . . . that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest." *Sweet*, 467 F.3d at 1319 (emphasis in original). "Furthermore, sex offenders are, in general, not considered a suspect class." *Ellison*, supra at *6. To the extent parole board members may have imposed a stricter parole requirement on Plaintiff due to his being a sex offender, "there would be a rational basis for this policy," which is all that is required by the Constitution. *Id*.; *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1036 (11th Cir. 2009). Accordingly, Plaintiff's equal protection claim is due to be denied.

### 4.     42 U.S.C. § 1981 Claim

Finally, Plaintiff claims that Defendants are selectively enforcing the parole laws in violation of his right to be free from "sex discrimination" under 42 U.S.C. § 1981. This claim fails because a claim brought pursuant to 42 U.S.C. § 1981 is limited to race discrimination. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) ("[W]e have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination *solely because of their ancestry or ethnic characteristics.*") (emphasis added). Accordingly, Plaintiff has failed to demonstrate that Defendants engaged in purposeful or invidious discrimination actionable under § 1981, and summary judgment must be granted in favor of Defendants.

## IV.    CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment be GRANTED;
2. Judgment be GRANTED in favor of Defendants;
3. This case be DISMISSED with prejudice; and
4. Costs be taxed against Plaintiff.

It is further ORDERED that:

On or before **July 12, 2021,** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered. Failure

to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

      DONE this 28th day of June, 2021.

/s/ Kelly Fitzgerald Pate  
KELLY FITZGERALD PATE  
UNITED STATES MAGISTRATE JUDGE